IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SHAWN F. BYRNE, and<br>AMANDA E. BYRNE,<br><br>    Plaintiffs,<br><br>v.<br><br>TACO BELL OF AMERICA, LLC,<br>a Delaware corporation, and TACO BELL<br>OF AMERICA, INC.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CIV-17-361-R |

## ORDER

Before the Court is Defendants' Motion to Dismiss. Doc. 8. Plaintiffs responded, Doc. 9, and Defendants replied. Doc 10. For the reasons that follow, the Motion is GRANTED IN PART and DENIED IN PART.

Plaintiff Shawn E. Byrne, a police officer with the Oklahoma City Police Department for the past 15 years, has sued Taco Bell on the basis that several of its employees contaminated his food before serving it to him. Doc. 1, at 2. Following an evening volunteer stint at a church event on February 10, 2017, Mr. Byrne stopped by a Taco Bell drive-through in Oklahoma City to order a steak quesadilla and soda. *Id*. Moments after driving away and biting into his food, Mr. Byrne's mouth and eyes began burning—pain he compared to being pepper sprayed in the face and mouth. A visit to the doctor the next morning revealed serious burns in his throat. *Id*. at 3.

1

Mr. Byrne, who was wearing his police uniform, apparently saw the Taco Bell employees laughing before handing him his food. A later investigation by the Oklahoma City Police Department suggested foul play. Video footage showed the employees, two of whom are allegedly convicted felons, place Mr. Byrne's food in packaging that had fallen on the floor; one employee admitted to putting chipotle sauce rather than quesadilla sauce on the food; and the leftover quesadilla tested positive for traces of cologne. *Id*. at 3–4.

Less than two weeks after the incident, Mr. Byrne underwent surgery for appendicitis—appendicitis that the doctor said was likely caused by the burn incident given appendicitis is rare for someone of Mr. Byrne's age. *Id*. at 4. This allegedly came at a inopportune time for Mr. Byrne. His wife, Plaintiff Amanda Byrne, was nearly due with their child. Because he could not work, Mr. Byrne was forced to take more than 127 hours of sick leave and missed 68 hours of extra jobs. *Id*. And unsurprisingly, this apparently compelled Ms. Byrne to assume extra duties in caring for her husband and caused her serious emotional stress. *Id*. at 4.

Mr. Byrne now brings three claims against Taco Bell: products liability, negligence, and intentional infliction of emotional distress. Ms. Bryne has joined him in his IIED claim. Taco Bell has moved to dismiss all claims.

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a pleading must offer more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. There must be "sufficient factual matter, [which if] accepted as true . . . state[s] a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A plausible claim is one that "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff must "nudge[] [her] claims across the line from conceivable to plausible . . . ." *Twombly*, 550 U.S. at 570. Further, the Court "must accept all the well-pleaded allegations of the complaint . . . and must construe them in the light most favorable to the [non-moving party]." *Thomas v. Kaven*, 765 F.3d 1183, 1190 (10th Cir. 2014).

The Court first takes up the Byrnes' claims for intentional infliction of emotional distress. "[A]s a general rule, it is not within the scope of an employee's employment to commit an intentional tort upon a third person. *Schovanec v. Archdiocese of Oklahoma City*, 188 P.3d 158, 176 (Okla. 2008), *as corrected* (July 2, 2008). As a result, employers such as Taco Bell typically are not liable for the intentional torts of their employees. The exception to this general rule is when the conduct is

> 'fairly and naturally incident to the business', and is done 'while the servant was engaged upon the master's business and [is] done, although mistakenly or ill advisedly, with a view to further the master's interest, or from some impulse of emotion which naturally grew out of or was incident to the attempt to perform the master's business.'

*Rodebush By & Through Rodebush v. Oklahoma Nursing Homes, Ltd.*, 867 P.2d 1241, 1245 (Okla. 1993) (citing *Russell-Locke Super-Service Inc. v. Vaughn,* 40 P.2d 1090, 1094 (Okla. 1935)).

Neither party addresses the problem with Mr. Byrne trying to recover from Taco Bell for its employee's intentional torts. But in any event, those claims, at least as pled, cannot proceed. It is far from clear how, if the Taco Bell employees did in fact contaminate Mr. Bryne's food with pepper sauce and cologne, that was done in order to further Taco Bell's interest. "[S]erving food or drink which injures a customer in no way promote[s] or facilitate[s] [an employer's] business activities." *Thomas v. Speedway Superamerica, LLC*, 2006-Ohio-5068, 2006 WL 2788522, *4 (Ohio Ct. App. 2006) (holding that gas station attendee's contaminating a customer's beverage with germicide and deodorant cleaner was not within employee's scope of employment); *see also Livingston v. Griffin*, 2007 WL 2437433, at *2–3 (N.D.N.Y. Aug. 22, 2007) (finding that even though "the service of food itself would clearly fall within" correctional officers' scope of employment, their "knowing, deliberate, and intentional service of food adulterated with drugs" was not).

Taco Bell also asks the Court to dismiss Mr. Byrne's claim for "product liability." Doc. 1, at 1. As an initial matter, it appears that plaintiffs may sue under Oklahoma law for injuries resulting from food-borne illnesses under a theory of negligence, strict liability, or breach of warranty. *See, e.g., Averitt v. Southland Motor Inn of Oklahoma*, 720 F.2d 1178, 1180 (10th Cir. 1983) (recognizing plaintiff's assertion of all three claims); *see also Griffin v. Asbury*, 165 P.2d 822, 825 (Okla. 1945) (noting that a person "seeking damages from a food manufacturer for injuries caused by eating unfit food is not compelled to elect between

implied warranty and negligence as a ground for recovery"); *see also* Cause of Action for Personal Injury or Illness Caused by Foodborne Pathogens, 59 Causes of Action 2d 433 (explaining that most states recognize three separate causes of action). Taco Bell argues that Mr. Byrne has failed to state a claim because it is unclear from the complaint that the product was in any way defective when it left the possession of the store. The Court respectfully disagrees. Mr. Byrne alleged that severe pain resulted upon eating his food only moments after leaving the drive-through. Doc. 1, at 3. The Oklahoma City Police Department's official investigation uncovered traces of cologne on the quesadilla and that an employee had intentionally added chipotle sauce to the food. These facts, when viewed in the light most favorable to the plaintiff, obviously allege the food was defective.

Finally, Taco Bell moves to dismiss the negligence claim on the ground that Mr. Byrne has failed to plead any causal connection between his injuries and the actions of Taco Bell. Under Oklahoma law, an injured person may recover from a food supplier in negligence for injuries sustained by consuming tainted or unadulterated foods. *See, e.g., Day v. Waffle House, Inc.,* 743 P.2d 1111, 1113 (Okla. Civ. App. 1987) (collecting cases). Under a negligence theory, Mr. Byrne simply needs to "establish the traditional elements of the existence of a duty to the injured party, a breach of that duty, and damages proximately flowing therefrom." *Id*.

The Court finds that Mr. Byrne has stated a claim for negligence. To be clear, much of Mr. Byrne's complaint suggests that the Taco Bell employees acted intentionally. He alleges that the employees contaminated his food after seeing him in his police uniform. If the employees acted intentionally, Mr. Bryne cannot hold Taco Bell liable under a

negligence theory: prevailing under the doctrine of respondeat superior would entail Mr. Byrne proving that the employees "act[ed] within the scope of employment in furtherance of assigned duties." *N.H. v. Presbyterian Church (U.S.A.)*, 998 P.2d 592, 598 (Okla. 1999). For the reasons previously explained, intentionally adulterating food does not fall within the employees' scope of employment. That said, viewing the facts in the light most favorable to the plaintiff, cologne or chipotle sauce could have ended up on the food through an employee's gross negligence. Dismissal of Mr. Bryne's claim for gross negligence would therefore be inappropriate.[1]

Defendants' Motion to Dismiss is granted in part and denied in part. Though Plaintiffs seek leave to amend, is not clear from these facts how they could amend to remedy the claims for intentional infliction of emotional distress. To the extent Mr. Byrne would like to amend his Complaint to add claims for both strict liability and breach of implied warranty, he is given through June 2, 2017, to do so.

IT IS SO ORDERED this 23rd day of May 2017.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

[1] And as a final matter, it also does not appear that Mr. Byrne could hold Taco Bell liable under a theory of negligence per se. While Oklahoma criminalizes adulterating food, Okla. Stat. tit. 63 §§ 1 – 1104, 1 – 1106, 1 – 1109, at least one Court has recognized that where a food vendor's sale of adulterated food might constitute negligence per se, the employee's intervening criminal act of contaminating that food is unforeseeable and thus relieves the employer of liability. *See Thomas*, 2006 WL 2788522 at *3.